No. 2183.—SAMUEL HIRSCH *v.* THOMAS P. LEATHERS, et al.

A steamboat that takes goods on board at the port of New Orleans, and gives a bill of
lading obligatory to deliver the goods at a given point or place on the Yazoo river, not on
the route or line of the steamer, with the reservation of the privilege of transhipment, is
liable in case of loss or failure to deliver the goods according to the contract. This
liability is the same, whether the loss occurs' before transhipment or afterward; in the
latter case, the second vessel is as much theirs as the first, and the liability is the same
as if the loss had occurred on the first vessel.

APPEAL from the Fourth District Court, parish of Orleans.
*Theard,* J. *Clarke, Bayne & Renshaw,* for plaintiff and appellee.
*McCay & Luxenburg,* for defendant and appellant.

TALIAFERRO, J. This is an action against the captain and owners
of the steamer Magenta to render them liable in damages, to the
amount of a thousand dollars, for the loss of a shipment of goods
made by the plaintiff, who alleges that the goods were delivered. The
answer is a general denial. The plaintiff obtained judgment as
prayed for in the court below, with legal interest from judicial
demand, with privilege on the steamer, her tackle and furniture. The
defendants have appealed. It is shown that at the time the shipment
was made, the steamer Magenta was a packet, running between New
Orleans and Memphis, and advertised to take freight and passengers
for Yazoo river, with the privilege of reshipping. The plaintiff, in
October, 1866, shipped a bill of goods by the Magenta from New
Orleans to Sidon, on the Yazoo river. The goods were transferred at
Vicksburg to a small steamer called the Myrtie, to be carried from
there to Sidon. Before reaching Sidon the small steamer struck a
snag, by which a hole was made through her bottom, causing her to
sink in a very short time. The goods on board were sent in a dam-
aged condition to Greenwood, a point on the Yazoo above Sidon, and
sold. The plaintiff's goods were not insured.

The evidence, we think, entitles the plaintiff to recover. It is
shown by the testimony of an old and experienced steamboat officer,
the captain then of a steamer, and who had been in that capacity on
many boats previously, that the small boat upon which the plaintiff's
merchandise was transhipped, was utterly unseaworthy. He states
that he was on board of her on her second trip before the last she
made, for the purpose of examining her, at the request of a friend who
was disposed to buy the boat, if found suitable. This witness states,
and his testimony is in no manner impugned, that he went into her
hold and found thirteen or fourteen of her floor timbers broken and
splintered up, which impaired the strength of the boat; that the
Myrtie was a very weakly built boat and in a very frail condition on
the trip on which she sunk, and previously. The witness thought she
was not seaworthy, and that she was liable to go to pieces by the
working of her machinery. He stated that the person in charge of the

Myrtie during the trip on which she sunk, was not competent to navigate her as a master; that he was only. competent as a clerk; that the boat had no regular master; the witness was applied to by one of the owners of the Myrtie to take charge of her, but declined because he did not consider. her safe. This evidence is so clear and direct, and given after a special examination of the boat, made at a very short time preceding her last trip, that it can not be counterpoised by the certificate of the Inspector, given six months before at Cincinnati, and the statement of the officer in command at the time the boat sunk. In fact the testimony of the latter does not conflict in any material manner with the testimony of the principal witness called in behalf of the plaintiff. True, he says he examined her very particularly, and knew she was in every way sound, but he also said the Myrtie was a light boat, lighter than he would have built her; and, on cross-examination, stated that on the down trip, a few days before receiving the goods from the Magenta, the Myrtie rolled over a log and broke seven or eight timbers, and soon afterwards that he had the cracked timbers spliced and spiked.

The privilege of transhipment stipulated by the carriers by no means exonerates them from their obligation to deliver the goods at the point named in the contract of affreightment. They were bound in reshipping to employ a seaworthy vessel, and as to their liability the second vessel is considered as much theirs as the first. Abbott on shipping, 6 An. 544.

Judgment affirmed.